Nov. Term, 1837.

CUMMINS
v.
WHITE.

on, &c. This is not sufficient; a particular day should be named.

*Per Curiam.*—The judgment is affirmed. To be certified, &c.

*W. Quarles*, for the state.

*C. B. Smith* and *C. H. Test*, for the defendant.

---

4b 356
146 302

## CUMMINS *v.* WHITE and Another.

The jurisdiction of Courts of equity, in matters of account, has been gradually enlarged, until it has become concurrent with that of common law Courts, to an almost unlimited extent, over the mutual dealings of parties, even when those dealings consist of items of a purely legal character.

Courts of equity, however, have no jurisdiction over accounts where there is but one item on a side, or where there is no mutuality of dealing and a discovery is not required.

In matters of account which are mutual and complicated, or where a discovery is required, or a multiplicity of suits will be avoided, or the remedy at law is not full and adequate, or fraud, accident, or mistake, is connected with the subject, Courts of equity have jurisdiction; but where none of these characteristics exist, the mutual dealings of the parties result in causes of action, matters of set-off, &c., cognisable only at law.

Courts of equity sometimes protect a creditor against the effects of the insolvency of his debtor, where there are mutual credits and the law furnishes no adequate remedy, by decreeing a set-off.

A defendant in a suit at law, who confesses judgment, reserving equity, &c., has no right to proceed in chancery for his demand against the plaintiff, which he would not have had without such reservation.

An objection that the Court, whether of law or equity, has no jurisdiction over the subject-matter in controversy, may be made at any stage of the suit.

If a party with full knowledge of the facts, voluntarily pay an unjust debt which is attempted to be enforced against him by legal proceedings, he cannot afterwards recover it back either at law or in equity; *a fortiori*, if a debt thus paid had been previously in part paid, the first payment cannot be recovered back.

If a note upon which the maker has confessed judgment, was obtained by fraud or mistake, he may obtain relief in a Court of chancery.

*Wednesday, November 29.*

APPEAL from the *Jefferson* Circuit Court.

DEWEY, J.—*Cummins* by his bill in chancery states, that in 1816 he was indebted to *Jacob White* in the sum of 633 dollars, for which he executed his promissory note payable in

1820. On the fifth of *November*, 1823, he sold and conveyed to *White* a quarter section of land at the price of 400 dollars. This sum was to be credited on the note, which not being at hand at the time, *White* gave *Cummins* his receipt for the deed of conveyance, acknowledging that he was to credit the 400 dollars on the note. In 1823 or 1824, *Cummins* sold to *White* a wagon and harness at 75 dollars, which sum was also to be credited on the note. In 1824, the note was assigned by *Jacob White* to *Israel White*, and soon afterwards was credited with 40 dollars, the price of a horse. In 1827, a settlement of mutual accounts took place between *Cummins* and *Jacob White*, in which the former was found to be indebted to the latter in the sum of 112 dollars and 10 cents, for which he executed his note. The settlement did not include the price of the land or of the wagon and harness, *Cummins* "supposing and believing" they had been credited on the note for 633 dollars. In 1829, *Israel White* informed *Cummins* that both the notes had been assigned to him, and demanded payment.

In the same year *Israel White*, as assignee, commenced a suit on both notes, when *Cummins*, "greatly to his surprise," discovered that no credit for the price of the land, or the wagon and harness, had been entered upon the larger and older note. In *August*, 1830, *Cummins* fully satisfied the latter note by conveying to *Israel White* 230 acres of land at the price of 1,096 dollars and 87 cents, that being the amount due—"the attorney of *Israel White* refusing to allow on said note" any credit for the quarter section of land and the wagon and harness. At the *March* term, 1833, of the *Jefferson* Circuit Court, *Cummins* confessed judgment upon the note for 112 dollars and 10 cents, "reserving all defence in equity as fully as if defence had been made at law." The transfer of the notes by *Jacob White* to *Israel White* was without consideration, and made with a design to defraud creditors. *Jacob White*, at the time of filing the bill, was, and for a long time before had been insolvent. He was justly indebted to *Cummins* in the sum of 475 dollars, the aggregate of the prices of the quarter section of land and the wagon and harness, the same never having been applied to the payment of the note for 633 dollars, or otherwise accounted for. *Cummins* could not, as he believed, collect any part of the sum due him, of *Jacob White*, on ac-

count of his insolvency. *Israel White* threatened to sue out execution on the judgment confessed.

The prayer of the bill is, that until final hearing execution be stayed; that on final hearing the judgment be perpetually enjoined; and that the excess due from *Jacob White* to *Cummins* be decreed to be paid.

The Circuit Court granted an injunction.

*Israel White*, by his answer, denies all knowledge of the settlement·of book accounts mentioned in the bill, admits the assignment of the notes to him, and controverts all fraud in that transaction. He admits the commencement of suit on the notes, and that by a compromise between him and *Cummins*, he received a conveyance of 230 acres of land in discharge of the note for 633 dollars. He asserts that the nominal·price of the land·was 1,096 dollars and 87 cents, the amount·due on the note, and alleges that the price was fixed without regard to the real value of the land. He admits the recovery of judgment on the note for 112 dollars and 10 cents as charged in the bill, and repeats that he is the *bona fide* owner·of it.

*Jacob White* also answered. He denies the alleged fraud in assigning the notes to *Israel White*, and that the 75 dollars for the wagon and harness, the purchase of which he admits, was to have been credited on the note, and asserts the wagon and harness were included in the settlement of 1827 mentioned in the bill. He admits the purchase of the quarter section of land at 400 dollars, the receipt for the deed, and the agreement that the price of the land should be credited on the note as charged in the bill, but states his belief that this matter was adjusted in the settlement of accounts made in 1827, and claims that the receipt should have been given up to him; and he denies that he is, in any manner, indebted to *Cummins*. His answer contains affirmative matter, which is omitted in this statement, as it is entirely unsupported by the evidence in the cause.

*Cummins* replied generally. · On final hearing, the only proof (except the exhibits) was, that the 400 dollars for the quarter section of land, and 75 dollars for the wagon and harness, were not, nor was either of them, included in the settlement of 1827, and the insolvency of *Jacob White*. The Cir-

cuit Court dissolved the injunction and dismissed the bill.
*Cummins* appeals.

The appellant, assuming that in matters of account and fraud, Courts of law and equity have concurrent jurisdiction, and that in the present case he had a right to avail himself of either tribunal, contends that the decree of the Circuit Court is erroneous; 1st, because the bill discloses matter of account; and 2dly, because fraud and mistake are alleged in the bill, and established by the proof. That the two Courts possess concurrent jurisdiction over these subjects cannot be denied; and it is equally true, that where there is a concurrency of jurisdiction over the cause of a suitor, he has a right to elect that to which he will resort for redress.

At a very early stage of *English* jurisprudence, Courts of chancery began to take cognisance of matters of account, in consequence of the inadequacy of the remedy at law by the old action of account, and the great delay and expense of that mode of procedure; and have gradually enlarged the jurisdiction thus assumed, until it has become concurrent with that of the common law Courts, to an almost unlimited extent, over the mutual dealings of parties, even when those dealings consist of items of a purely legal character. 1 Story's Eq. 424.

There is, however, a distinction in the power of the two tribunals with regard to this subject. It is certain that over multifarious and complicated mutual dealings, a Court of equity has jurisdiction, and that it has none over accounts consisting of but one item on a side; while the power of the law Court embraces both extremes. So, equity has no jurisdiction over accounts, however numerous and important the charges, where there is no mutuality of dealing, and discovery is not required; but law has.

At what point between single mutual items, and dealings swelled to great complexity, the right of a Court of equity to take cognisance of the matter begins or ends, has not been denoted with certainty, and, from the nature of the subject, can never be very clearly defined. As we recede from the two extremes, and approach the line of commencing or terminating jurisdiction, much must necessarily be left to the discretion of the chancellor; he must decide each case upon its own peculiar features. It may, however, be safely stated, that in matters of account which are mutual and complicated, or

Nov. Term,
1837.

CUMMINS
v.
WHITE.

where a discovery is required, or a multiplicity of suits will be avoided, or the remedy at law is not full and adequate, or fraud, accident, or mistake is connected with the subject; equity has jurisdiction: on the contrary, where none of these characteristics are present, the mutual dealings of parties result in causes of action, or matters of set-off, or other defence, cognisable only at law. Jer. Eq. 504.—1 Story's Eq. 438, 441. *Dinwiddie* v. *Bailey*, 6 Ves. 136.—*Corp. of Car.* v. *Wilson*, 13 Ves. 279.—*Smith* v. *Marks*, 2 Rand. Rep. 449.—2 Johns. Ch. R. 169.—1 Dana's Rep. 584.—1 Madd. Ch. Pr. 70, 71.—*Moses* v. *Lewis*, 12 Price, 502.

The case last cited is in point. It was "a bill for an account of dealings and transactions between the parties in respect of a colliery rented by the plaintiff of the defendant, and of the quantity of coals got and raised therein by plaintiff, and rent paid by the latter from time to time; and of certain promissory notes drawn, made, and endorsed by the plaintiff for defendant's use; and praying further that" a certain sum "(for which the defendant had obtained a verdict in an action at law brought by him against the plaintiff as mentioned in the bill) might be set off against what should be found to be due and owing to the plaintiff on taking the account between them, and that the defendant might be compelled to pay the balance to the plaintiff." An injunction was also prayed. Demurrer to the bill:

*Graham*, B., with the concurrence of the whole Court, said, "I am of opinion that this demurrer should be allowed; for I cannot but think, that if the bill to which it has been put in could be sustained against it, the affairs of men in business might be thrown into inextricable confusion by such suits under similar circumstances. We are asked by the bill to interfere, by granting an injunction to restrain a party who has obtained a verdict at law in an action brought against the plaintiff in this suit, of a very common and ordinary nature, and which has been tried in the regular course at *nisi prius*. . . . . I think it (the bill) does not establish a case of account on its own statement, as it merely states what might have been pleaded at law as matter of set-off, or might be made the subject of defence at law in some other way. . . . . . The plaintiff has come too late to seek the object of his suit. If we were to entertain bills of this sort in this stage of the

proceedings at law, judgments would be of no avail wherever
there was any thing in the course of dealing between the plain-
tiff and defendant that could be called an account between the
parties, or which, by dint of ingenuity in the framing of a bill
of this sort, might be made to carry the appearance of an ac-
count.  . . . . By encouraging such a bill in this late stage of
the action, we should invite defendants to have recourse to
this mode of delaying plaintiffs on every occasion of judgment
recovered; and it would be an example very frequently fol-
lowed, to the great embarrassment and hinderance of justice."

It is evident that the bill before us, if tested by the decision
of the case of *Moses* v. *Lewis*, and the reasoning of the Court,
which we have so liberally quoted, as well as by the general
principles previously stated, cannot be sustained on the score
of its containing matter of account.  Indeed, it does not ap-
pear to have been framed with a view that it should be so
sustained.  It does not claim that a series of mutual dealings
require adjustment; nor does it pray an account.  It is doubt-
ful whether it even makes out an indebtedness by *Jacob White*
to the plaintiff; but allowing such to be the fact, it merely
states that there are two specific items amounting to 475
dollars on the part of the plaintiff, with regard to the proof of
which no difficulty is suggested, and which it is prayed may
be in part set off against the judgment in favour of *Israel
White*, and that *Jacob White* may be decreed to pay the excess
to the plaintiff.  The bill does not exhibit, nor attempt to
exhibit, a single feature of equity jurisdiction in matters of
account; its object evidently is set-off in part, and the recove-
ry of the residue of a specific sum claimed by the plaintiff.
This object cannot be accomplished by this suit.  It is proba-
ble, that had the bill been well founded on matter of account,
and had it been exhibited while the action at law was un-
decided, the plaintiff would have been entitled to have pro-
ceedings stayed until an account could be taken, and finally to
a perpetual injunction had the balance been found to be in his
favour.  *Moses* v. *Lewis, supra.*

It is true that equity sometimes protects a creditor against
the effects of the insolvency of his debtor, when there are
mutual credits between them and the law furnishes no ade-
quate remedy, by decreeing a set-off.  But this principle can-
not avail the plaintiff in this case; the insolvency of *Jacob*
46

*White* (granting his indebtedness) could have done him no harm, had he made the defence at law which was in his power.

The plaintiff supposes he is entitled to a hearing in chancery, in consequence of the reservation contained in the judgment confessed. In this we apprehend he is mistaken; he could not reserve a right which he did not possess; he had no privilege to forego his set-off in the action at law, and transfer his claim to a Court of equity; nor could the consent of both parties give him such a right. The jurisdiction of Courts is not conferred in that manner.

It is urged that the objection to the jurisdiction of the Court, for want of equitable matter in the bill, comes too late on final hearing—that the question should have been raised by demurrer. We are aware that respectable decisions can be found in favour of this position. But we think the weight of authority and principle is adverse to it. We understand that the want of jurisdiction over the subject-matter of a controversy, in a Court of law or equity, is fatal at any stage of a suit, and decided accordingly in the case of *Bryan* v. *Blythe,* at the *November* term, 1836, of this Court. There are certainly some objections to a bill which would prevail on demurrer, that will not avail on final hearing—such as a want of proper parties, or multifariousness. But this is not the case with objections which strike at the vitals of a cause by showing want of equity, or jurisdiction over the subject-matter, (if there be any distinction between them,) apparent upon the face of the pleadings. Mitf. Pl. 108.—2 Rand. 449.

We have, so far, considered *Jacob White* indebted to the plaintiff for the quarter section of land and the wagon and harness, which the bill states were to have been applied in part extinguishment of the note for 633 dollars, but which were not so applied. In the character of a debt, we have seen that the price of these things formed a proper matter of set-off at law, with regard to which equity gives no relief. If we view the transactions as amounting to part payment or satisfaction of the note, the whole of which, principal and interest, the plaintiff afterwards knowingly satisfied by the transfer of 230 acres of land, the result will be the same. It is a well settled principle, that if a party, with full knowledge of the facts, voluntarily pays an unjust debt which is attempted to be

enforced against him by legal proceedings, he cannot, afterwards, recover it back by an action at law, although at the time of payment he protested against it. Chitt. on Cont. 190. *Brown* v. *M'Kinally*, 1 Esp. R. 279.—*Knibbs* v. *Hall*, id. 84. *Marriott* v. *Hampton*, 2 id. 546.—*Cartwright* v. *Rowley*, id. 723.—*Brisbane* v. *Dacres*, 5 Taunt. 144. This doctrine has been sanctioned as a sound general principle in equity by Ld. *Eldon*, in the case of *Bromley* v. *Holland*, 7 Ves. 23. If a party cannot recover back a payment thus wittingly made; but rendered unjust in consequence of a prior extinguishment of the debt, there is still less reason for claiming that he can regain the first payment which was justly made.

It only remains to consider the position of the plaintiff, that the note for 112 dollars and 10 cents, on which he confessed judgment, was obtained through fraud and mistake. If the note was obtained by means of either, the case comes within the concurrent jurisdiction of equity, and without the aid of the reservation contained in the judgment, the plaintiff is still entitled to relief.

But it is a sufficient answer to this objection to the decree of the Circuit Court, that neither fraud nor mistake is charged in the bill in procuring the note in question. It is, indeed, alleged that in making the settlement of accounts in 1827, between the plaintiff and *Jacob White*, the former did not exhibit his claim for the quarter section of land and wagon and harness, amounting to 475 dollars, because he supposed it had been credited on the note for 633 dollars. How could his mistaken supposition in this matter invalidate the note for 112 dollars and 10 cents, which was given on that occasion? It is not pretended that the balance was not correctly struck, nor does either party request to have the settlement opened. From the plaintiff's own showing, the claim omitted should not have been included in the settlement; it was payment on the note; and the neglect of *Jacob White* to endorse the credit, could not affect its efficacy. The endorsement would only have been evidence of the fact of payment, and that evidence was not necessary to the security of the rights of the plaintiff, for he states that he then held a receipt for 400 dollars, the price of the land, and he suggests no difficulty in proving the 75 dollars for the wagon and harness. It is thus evident from the plaintiff's own statements, that he had it in his power to

enforce the application of these payments to the note for 633 dollars, at any period from 1823, when he says they were made, to 1830, when he voluntarily, with full knowledge of all the facts, satisfied the whole without regard to former transactions.

These facts, so far from showing that any fraud was practised upon the plaintiff in the settlement of accounts, or that he acted under such a mistake of facts as can invalidate the note given on that occasion, rather account for that indifference to the matter which induced him to rest quietly under the supposition of a fact, without so much as an inquiry as to its existence; indeed, they tend to implicate the truth of his statement which assigns the reason of his conduct. On the other hand, there are circumstances of suspicion which attach themselves to *Jacob White*. He claims in his answer that certainly the wagon and harness, and he believes the quarter section of land, were included in the settlement of 1827. The evidence shows the truth to be otherwise.

On the whole, were there no obstacles to the success of the plaintiff arising from legal principles, the facts of the case are involved in too much doubt and suspicion to authorise a Court of equity to interfere with a judgment at law.

SULLIVAN, J., having been concerned as counsel, was absent.

*Per Curiam.*—The decree is affirmed with costs. To be certified, &c.

*S. C. Stevens*, for the appellant.