The defendant in error was indicted in the Cortland Sessions for grand larceny, in stealing from the county poor-house a quantity of hams, which had been procured for the support of the poor of the county. The indictment contained two counts. The first count alleged the property taken to be that of Alonzo W. Gates, who at the time of the larceny was the keeper of the county poor-house, and had the custody and charge of the property there, and had in fact purchased these identical hams with his own money, by the direction of the superintendent of the poor of the county. Before the larceny, he had been reimbursed by a draft on the county treasurer of that county, which had been paid.
The second count of the indictment alleged the hams to be the property of the county of Cortland. The defendant was found guilty as charged in the indictment, and was sentenced to imprisonment in the State prison for the term of five years.
Upon a writ of error brought to the Supreme Court, that court reversed the judgment and conviction, and ordered the discharge of the prisoner upon the ground that the property stolen was that of Benjamin, the county superintendent of *Page 128 
the poor, and that it was erroneous to charge in the indictment that the same was the property of Gates. The people bring their writ of error to this court.
It is now insisted on the part of the prisoner that the possession of Gates of the property stolen was not of such a character as authorized the averment in the indictment, that it was the property of Gates. It is undeniable that in an indictment for larceny it is essential that the pleader should aver title or ownership in the property stolen to be in the true owner, if known, and, if not known, then it should be averred that the owner was to the jurors unknown. This is a general rule in criminal pleading, and, in applying it, it has been held, that the owner was one who had a general or special property in the thing taken.
In the present instance, Gates had purchased the property stolen with his own money, and he had at the time of the theft as keeper of the county poor-house, the actual possession and control of the stolen property. After the purchase by him and before the larceny, he had been reimbursed the amount of his expenditure by a draft on the county treasurer of the county of Cortland; and, on payment of which, out of the funds of the county, it would seem to be clear that the hams stolen became the property of the county of Cortland. I cannot find any warrant for saying that the same were the property of Benjamin, the superintendent of the poor of that county. Neither can I assent to the position that Gates, the keeper of the county poor-house, was the servant of Benjamin, the superintendent. If a servant at all, he surely was that of the county whose agent he was, and the circumstance that the superintendent was the source of his appointment did not make him the servant of that officer. The latter was in fact but the agent or servant of the county, and whatever he did as such was done for and on behalf of the county of Cortland. As well might it be said that the numerous officers throughout the State, authorized to be appointed by the governor, became by his appointment of them thereby his servants, instead of, as they are in truth, in common with the governor himself, the agents and servants *Page 129 
of the people of the State. The absolute owner of the property stolen must therefore be held to he that of the county of Cortland, whose money was taken and applied for the purchase thereof. The question then arises whether the averment in the indictment that the ownership was in Gates, the agent or servant of the county, who had the actual possession and control of the property at the time of the larceny, was not itself sufficient.
The cases abundantly sustain the position, that an averment of ownership in the person having the actual possession and control of the thing stolen at the time of the theft, is all that is required. In a modern case in England, where a stage-coach had been robbed of a box containing a variety of articles, it become material to determine whether the goods so stolen could be laid as the property of the coachman. There were three counts in the indictment, but one of them, which laid the property in the coach proprietors, failed on account of a variation; another, which laid the property in persons unknown, was rejected by the court as improper; and the case therefore necessarily proceeded upon the remaining count, which laid the property in the coachman. It appeared in evidence that the box was delivered by the servant of a tradesman in London to the book-keeper at the inn from which the coach set off, who called it over among other things in the way bill, and he delivered it to a porter, who put it into the coach, and that the coachman in whom the property was laid, drove the coach to a place about thirty-eight miles from London, during which journey the box was stolen from the coach by the prisoners. It also appeared that the proprietors of the coach never called upon the coachman to make good any losses except when they happened by his neglect, and that for goods stolen privately from the coach they never expected any compensation from the driver. The jury having found the prisoners guilty, the case was stated for the consideration of the judges, and, after it had been ably argued and much considered, a majority of the judges were of opinion that the property was well laid to be in the driver. HOTHAM, B., who delivered their *Page 130 
opinion, said "that the material question was whether the driver had the possession of the goods, or only the bare charge of them, but that the case was not open to that distinction; for, although, as against his employers, the masters of the coach, the mere driver can only have the bare charge of the property committed to him, and not the legal possession of it, which remains in the coach master, yet, as against all the rest of the world, he must be considered to have such a special property therein as will support a count charging them as his goods, for he has, in fact, the possession and control over them, and they are intrusted to his custody and disposal during the journey. * * * That the law, therefore, on an indictment against the driver of a stage coach, or on the prosecution of the proprietors, considers the driver to have the bare charge of the goods belonging to the coach; but, on a charge against any other person for taking them tortiously out of the driver's custody, he must be considered as the possessor, and, therefore, it was well laid that he was the owner." (Rex v. Deakin Smith, O.B. 1800; 2 Leach, 862, 876; 2 East. C.L. ch. 16, § 90, p. 653.)
In the case of Regina v. Burdick (8 Car. P. 237), Busby was the servant of Webb, and was sent out by his master to receive money for him from his customers, and he was robbed of such money before it reached his master, on his way home. In the indictment the property was laid as that of Webb, and prisoner's counsel contended that it could not be laid as the property of Webb, as it had never reached his hands except by the possession of his servant. Mr. Baron ALDERSON was inclined to think the money could not be laid as the money of the master, but, as the grand jury was in session, recommended that a new indictment be found, which was immediately done; which laid the money in one count as the property of Busby, the servant, and in the other as the property of Webb, and on this indictment the prisoners were convicted.
In Regina v. Bird (9 Car. P. 44), it was held that it was well laid in the indictment, that the property stolen was that of one Miers, although he had only the possession *Page 131 
of it, one Keyzor being the actual owner. Whenever a person has a special property in a thing, or holds it in trust for another, the property may be laid in either. (21 Maine, 586; 22 id. 171; 4 Car. P. 391; 8 Tex. 115.) As, for instance, goods left at an inn (2 East. P.C. 658), or intrusted to one for safe keeping (Rex. v. Stathan, 1 Leach, 356), or cloth left with a tailor, or linen with a laundress. (Wharton's Cr. Law, vol. 2, §§ 1824, 1830.)
In Owen v. State (6 Humph. 330), a horse got loose from his owner, Booth, and was taken in the field of Edmonston, and was placed in his stable, from whence it was stolen. It was held that the property was well laid in Booth, the owner, and also in Edmonston, the temporary possessor; that the horse was in the constructive possession of the owner, and in the actual possession of Edmonston; and that the indictment might well allege the property to be in the owner, or in the third person in whose possession it was at the time of the larceny; and it was also held that a general finding of the jury on both counts of the indictment was well sustained by the proof, and the conviction legal and regular. And the principle of these cases has been recognized and affirmed by the courts of this State.
In Ward v. The People (3 Hill, 395), the prisoner was indicted and convicted of stealing property from one Flagg, and the indictment averred that the property stolen was the property of Flagg. It in truth was the property of another, and Flagg had himself stolen it from the true owner. Flagg was asked, on the trial, if he had not stolen the butter. The court, in its opinion, says: "If the question had been answered in the affirmative, the fact would have been immaterial, because possession of property in the thief is sufficient to make it the subject of larceny, and the title may be laid either in the owner or in the thief." This case was taken to the Court for the Correction of Errors, and the judgment of the Supreme Court there affirmed. (7 Hill, 144.) Senator FOSTER read an opinion, combating the views of the Supreme Court, that possession of the thing stolen was sufficient to authorize an averment of ownership in the possessor; *Page 132 
but his views received only the assent of five senators, who voted for reversal, and fourteen members of the court voted for the affirmance of the judgment.
We are authorized therefore to assume, from these cases, that, Gates having the actual possession of the goods stolen, it was well laid in the indictment that he was the owner thereof. That if there could be any doubt on that subject, the county of Cortland must be conceded to have been the true owner of the property, and that a conviction upon an indictment, containing two counts, one of which laid the ownership in the actual possessor of the goods stolen, and the other in the true owner, is good, and should be sustained. There remain to be considered some other objections urged by the prisoner's counsel.
The prisoner's counsel challenged the array of jurors, on the ground that, the property stolen being alleged, in the second count, to be that of the county of Cortland, the jurors, being inhabitants of said county, were interested, and therefore disqualified to act as such. This challenge assumes that the property stolen was the property of the county of Cortland. This assumption we deem to be correct. But in our judgment, this fact furnishes no ground of disqualification of a juror, being an inhabitant of that county, to sit on an indictment of the thief. Can it be seriously urged that, if the State capitol is fired by an incendiary, all the inhabitants of the State are disqualified to sit as jurors on his trial, because the building destroyed is the property of the State, and all the inhabitants of the State are interested in the property of the State? The statement of the proposition carries with it its own refutation. The court properly overruled the challenge.
We think there was no reason for quashing the indictment upon the ground suggested. The indictment showed, upon its face, that it was presented in the Court of Sessions of Cortland county, by the jurors of the people of the State of New York in and for the body of that county, and that they presented the same upon their oath. We think this *Page 133 
indictment in the usual and approved form, and contains all the requirements of the statute.
It is also claimed that the judge erred at the trial in refusing to charge the jury in the language of Mr. Justice Blackstone, that "in cases of felony, confessions are regarded as the weakest and most suspicious of all testimony; very liable to be obtained by artifice, false hopes, promises of favor, menaces; seldom remembered accurately or reported with precision, and incapable in their nature of being disproved by other negative evidence." (4 Black. Com. 357.) It is to be observed in the first place that Blackstone uses this language in connection with his criticisms upon State trials for treason in England, and, although he intends his observations to have a general application to all cases of felony, he regarded them as primarily to be considered in State trials for treason. But the annotator upon this text of Blackstone thus remarks in a note: "It seems to be now clearly established that a free and voluntary confession by a person accused of an offense, whether made before his apprehension or after, whether on a judicial examination or after commitment, whether reduced into writing or not; in short, that any voluntary confession, made by a prisoner to any person, at any time or place, is strong evidence against him, and, if satisfactorily proved, sufficient to convict without any corroborating circumstances. But the confession must be voluntary, not obtained by improper influence, nor drawn from the prisoner by means of a threat or promise; for, however slight the promise or threat may have been, a confession so obtained cannot be received in evidence, on account of the uncertainty and doubt whether it was not made rather from a motive of fear or interest, than from a sense of guilt." (Citing Phil. Ev. 86.) Such undoubtedly is the rule as enunciated by the most authoritative text writers.
Burrill on Circumstantial Evidence says: "Confessions of this kind, when deliberately and voluntarily made, are justly regarded as constituting the highest and most satisfactory species of evidence that can be presented before a tribunal," citing numerous authorites. Greenleaf on Evidence (vol. 1, *Page 134 
§ 214), while sanctioning this doctrine, very properly observes, "that the evidence of verbal confessions of guilt is to be received with great caution," and he adds, in section 215, "subject to these cautions in receiving and weighing them, it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. The degree of credit due to them is to be estimated by the jury under the circumstances of each case." (Coon v. The State, 13 Sm. M. 246; McCann v.The State, id. 471.)
A learned author says: "A free and voluntary confession of guilt made by a prisoner, whether in the course of conversation with private individuals or under examination before a magistrate, is admissible in evidence as the highest and most satisfactory proof, because it is fairly presumed that no man would make such a confession against himself if the facts confessed were not true." He adds, in a note: "Mr. J. Blackstone and Mr. J. Foster, entertain a different opinion," and then quotes from 4 Black. 357, and from Mr. J. Foster. And he further says: "And the highest authorities have now established that a confession, if duly made and satisfactorily proved, is sufficient alone to warrant a conviction, without any corroborating evidence, aliunde," citing numerous authorities. (2 Russ. on Cr. p. 824). The court committed no error, therefore, in refusing to charge the jury in the language requested.
In view of these considerations, the judgment of the Supreme Court should be reversed, and the judgment of the Court of Sessions of Cortland county be affirmed, and the record is remitted to the Supreme Court to proceed therein according to law.
All the judges concurring, except HUNT and PARKER, JJ.,
Judgment accordingly. *Page 135