## ARGUED AND DETERMINED

### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT GAINESVILLE,

### SEPTEMBER TERM, 1848.

No. 49.—WILLIAM W. HOLDER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] *It is the right of the Judge to express his opinion on the facts to the jury, but not to *direct* their finding.

[2.] In criminal cases, it is the right and duty of the Judge to instruct and officially direct the jury, as to the law of the case, whilst they have, also, the right to judge of the law, as well as the facts.

[3.] In an indictment for murder, the Court instructed the jury that they "must find the defendant guilty of murder, of voluntary manslaughter, or not guilty." *Held*, that the charge was an improper interference with the right of the jury to find on the facts; because it precluded them from all inquiry as to any other grade of offence, but murder and voluntary manslaughter.

Indictment for murder, Habersham Superior Court, April Term, 1848. Tried before Judge DOUGHERTY.

The facts may be found in the decision of the Court.

HILLYER and J. W. H. UNDERWOOD, for plaintiff in error.

W. H. HULL, and SOL. GENL. WALKER, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

This was an indictment for murder; and upon the trail the presiding Judge instructed the jury in the following words: "If you find the defendant guilty of manslaughter, it must be of volunta-

*NOTE.—See *Infra—Beal vs. Mann.*

ry manslaughter; your verdict *must* find the defendant guilty of murder, of voluntary manslaughter, or not guilty." The jury found the prisoner guilty of voluntary manslaughter, and a new trial was asked, upon several grounds—among them this, to wit: " The Court erred in charging the jury, that if they found the defendant guilty of manslaughter, if must be voluntary manslaughter, and that their verdict must find the defendant guilty of murder, of voluntary manslaughter, or not guilty, and did not submit to the jury to find him guilty of involuntary manslaughter, either in the commission of an unlawful act, or in the commission of a lawful act without due caution and circumspection." The new trial was refused, and the defendant excepted.

We express no opinion upon any point made in this case, except one, and that is as to the *manner* of the Judge's instructions to the jury. In that there is obviously error. This charge interferes with the province of the jury, because it *directs* their finding on the facts.

The questions involved here, so far as civil actions are concerned, are not for the first time before this Court. We have in two cases, if no more, settled the rule. We have held, that in civil cases, it is the right and duty of the Judge to declare the law of the case to the jury, and I have no hesitation in saying, that the opinion of the Court upon the law is absolutely binding on the jury. To this extent goes the usage of our Courts and the authorities in England and America; for nothing is more immovably settled, than that a new trial will be granted, where the verdict of the jury is contrary to the law, as declared by the Court. And if the Court should err in the administration of the law, parties are fortunately not without remedy. We have also held that it is the privilege and the duty of the Court, to comment upon the evidence, to pronounce upon its competency, and to sum it up, and its right to express its opinion upon the facts proven. As I took occasion to say, in the case of *Anderson and others vs. the State of Georgia*, the right of expressing an opinion on the facts, is of doubtful propriety. Indeed, I there said, "I do not think that the Court ought to give an opinion, but that the Judge's power should be limited to summing up the facts, and to inferences of law deducible from them." I must here repeat the same conviction. In practice, it controls the verdict in nine cases in ten. It therefore defeats the right of trial by jury, guar-

anteed by the Constitution, and relieves the jury from that responsibility which is necessary to a proper discharge of their peculiar duty of giving judgment on the facts.   It seems to me that it is particularly wrong in view of the fact, that, except in a few distinguished instances, the verdict of a jury cannot be reached for a finding contrary to the facts, by any corrective tribunal. Through the jury, therefore, the Judge, as a general rule, is made irresponsible for his opinions on the evidence.   I am aware, too, that there are cases where such a power in the Court, is not only desirable, but necessary.   In cases of great complexity, it is right that the jury should have the aid of the Court in making up their verdict.   How to limit the right of opinion, so as to secure it from abuse, and yet secure its advantages, is the difficulty. Now, the rule is without limitation.   An opinion may be expressed by the Court in all cases, and there is no restriction but that which good sense, and respect for the great fundamental doctrine of trial by jury, imposes; a restriction which I am free to admit, has proven sufficient, very generally in our Courts, but which might not always be felt as any restriction at all.   We pretend not to suggest any modification of the rule—to modify it, if, indeed necessary, belongs to the Legislature.   We adhere to the rule.

It is well settled in England and America.   Lord Brougham, speaking of Lord Ellenborough, says : " Lord Ellenborough was not one of those judges, who, in directing the jury, merely read over their notes, and let them guess at the opinions they have formed, leaving them without any help, or recommendation, in forming their own judgments.   Upon each case that came before him he had an opinion, and while he left the decision to the jury, he intimated how he thought himself.   This manner of performing the office of a Judge, is now generally followed and most commonly approved."   2 *Brougham's Miscellanies, Public Characters, p.* 39.   I adduce this as evidence of what is the manner of instructing juries in England.   Authority from thence, might be strengthened to any extent, but it is not necessary.

[1.] Whilst we thus concede to the Judge the right of opinion on the facts, we have held, that he shall not *direct* the jury how they shall find, but shall leave that *distinctly* to them.   The distinction between *opinion* and *direction*, runs through all the books. Whilst the Judge may give to the jury his *help* or *recommendation,*

in making up their verdict, yet they are to be left free to judge
for themselves. The judgment on the facts, should not be left
by inference to the jury; it ought to be distinctly abandoned to
them. Their unquestioned right ought to be intelligibly present-
ed to them, and they ought to be invited to its exercise, in all ca-
ses where the Court intimates an opinion. They should be made
to feel that upon them alone, devolves the responsibility of their
verdict. They ought not to be permitted to feel that they can
take shelter under the opinion of the Court. See *Stell, Guardi-
an, vs. Glass,* 1 *Kelly,* 486, 487. 2 *Kelly* 379, 380, 381.

[2.] The case before us is on the criminal side of the Court.
I have been considering this question in reference to civil causes.
It remains to consider it in reference to criminal cases. Our Pe-
nal Code declares, "On every trial of a crime or offence, con-
tained in this code, or for any crime or offence, the jury shall be
judges of the law, and the fact, and shall in every case give a gen-
eral verdict of guilty or not guilty, and on the acquittal of any
defendant or prisoner, no new trial shall on any account be gran-
ted by the Court." *Prince,* 660. Juries were at Common Law
in some sense judges of the law. Having the right of render-
ing a general verdict, that right involved a judgment on the
law as well as the facts, yet not such a judgment as neces-
sarily to control the Court. The early commentators on the
Common Law, notwithstanding they concede this right, yet hold
that it is the duty of the jury to receive the law from the Court.
Thus Blackstone equivocally writes, "and such public or open
verdict, may be either general, *guilty* or *not guilty,* or special, set-
ting forth all the circumstances of the case, and praying the judg-
ment of the Court whether, for instance, on the facts stated, it be
murder, manslaughter, or no crime at all. This is where they
*doubt* the matter of law, and therefore *choose* to leave it to the de-
termination of the Court, though they have an unquestionable
right of determining upon all the circumstances, and of finding a
general verdict, *if they think proper so to hazard a breach of their
oath, &c.*" 4 *Black.* 361. *Coke Lit.* 228, *a.* 2 *Hale, P. C.* 313.
Our *Legislature* have left no doubt about this matter. The ju-
ries in Georgia can find no special verdict at law. They are de-
clared to be judges of the law and the facts, and are required in
*every case,* to give a general verdict of *guilty* or *not guilty;* so
jealous, and rightfully jealous, were our ancestors of the influence

of the State, upon the trial of a citizen charged with crime. We are not called upon in this case to determine the relative strength of the judgment of the Court and of the jury, upon the law in criminal cases, and shall express no opinion thereon. We only say that it is the right and duty of the Court to declare the law in criminal cases as well as in civil, and that it is at the same time the right of the jury to judge of the law, as well as of the facts in criminal cases. I would not be understood as holding, that it is not the province of the Court to give the law of the case distinctly in charge to the jury—it is unquestionably its privilege and its duty to instruct them as to what the law is, and officially to direct their finding as to the law. yet, at the same time, in such way as not to limit the range of their judgment. In short, the Court, in the full exercise of its own functions, must still obey the behest of the Statute, and concede to the jury the exercise of their judgment on all the law of the case. And this is all that seems to me necessary to be said on this branch of this discussion. We predicate our judgment of reversal upon the misdirection of the circuit Judge as to the facts of this case.

[3.] The rule upon this subject I have stated. Is there not something more in this charge than an expression of opinion? As it comes to us, there is no statement of the evidence; no summing up of the testimony; no hypothetical presentation of the facts; no submission of them, to the judgment of the jury. The Court assumes the facts, and upon that assumption directs the finding—it is more than directing, it is mandatory. In looking at the instructions to juries, particularly in criminal cases, of the able men of the English and American Bench, one is struck with the laborious effort of the Judge to inform them, to lay down the legal land marks by which their finding is to be guided, and to elucidate the facts—not the less, with the carefulness in the handling of the facts, with which they avoid trenching upon the appropriate duty of the jury. Here we hold the right of trial by jury sacred. It is secured by constitutional provision. Our organic law proclaims that it shall remain inviolate. It is the solemn duty of Courts to respect the injunctions of the Constitution. No man is tried by his peers, when the Court directs the jury on the testimony in his case. It is true, that as the laws are made by the people, and Judges hold office as the agents of the people, the presumptions are greatly in favor of Courts leaning, if they

lean at all, in favor of popular rights. Yet there might come a time, and the time create the man, who from mere love of power, or from mere corrupt motives, might absorb the power of both Court and jury. And judicial tyranny is not the less to be dreaded and avoided, because the people are ignorant of it, or acquiesce in it. Of all despotisms, that of the Bench is the most easily assumed and perpetuated. In this country, the people are slow to believe any thing evil of their magistrates. When elected, the Judge becomes to them a new man, and they look most favorably at all his acts. This is owing to that reverence for the law, which so eminently characterises the citizens of the Union.

These remarks are made without reference to the able Judge who presided in this case, or to any other Judge, and alone to illustrate the necessity of maintaining this non-intervention rule, with rigid severity. The charge under consideration denies the right of the jury, both on the facts and the law, to find the defendant guilty of any thing, but murder or voluntary manslaughter. You must find him guilty, says the Judge of murder, of voluntary manslaughter, or not guilty of any crime. The instruction shuts them up to a finding of the defendant guilty of murder, or voluntary manslaughter. They are precluded from considering the testimony in reference to involuntary manslaughter, or justifiable homicide. This charge would not have been in its effect any more directory, if it had said, *the evidence makes out a case of murder, or of voluntary manslaughter, and I direct you to find the one or the other.* Nor would it more effectually have precluded the jury from considering the question, whether the defendant was proven guilty of involuntary manslaughter, if it had said, *the evidence does not make out a case of involuntary manslaughter, and I direct you not to find him guilty of involuntary manslaughter.* Whilst it leaves them free to consider whether the defendant is guilty of murder or voluntary manslaughter, it shuts out from their consideration all other grades of offence. See *McLanahan et al. vs. Universal Ins. Company,* 1 *Peters,* 182. *The State vs. Cassader,* 1 *N. & McCord,* 98. 5 *Porter,* 215. 9 *Leigh,* 678. 2 *Humph.* 181, 311. 11 *Verm.* 621. 7 *Gill and Johns.* 44, 78. 3 *Brevard,* 514. 2 *McMullan,* 425. 4 *Humph.* 154. 16 *Peters,* 319. 5 *Alab.* 666. 1 *Alab.* 622. 9 *Peters,* 292, 418, 541. 8 *Mississippi,* 228. 11 *G. & Johns.* 472.

Judgment reversed.