No. 49.—DAVID H. WRIGHT, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The absence of Counsel, as a ground of continuance, is not favored by the Courts; especially where there is associate Counsel of acknowledged ability.

[2.] To continue a case, on account of the absence of Counsel, the affidavit should state that deponent expects to procure his services at the next term.

[3.] Popular excitement is no ground for postponing a cause, after one term of the Court has intervened since the crime was committed; neither does the subsequent renewal of the excitement, by newspaper agitation, produced by the escape and re-capture of the defendant, entitle him to further indulgence on this account; it being against public policy to allow a party to take advantage of his own misconduct.

[4.] To continue a cause, on account of the absence of a witness, it must affirmatively appear that he has been subpœnaed; information, as to the fact, will not suffice, unless it be verified.

[5.] The mere formation and expression of an opinion, does not necessarily disqualify a Juror; it should be deliberate, fixed and abiding.

[6.] In an indictment for killing a D. Sheriff, the official character of the party slain need not be alleged.

[7.] If a charge is requested of the Court, and given by reading the law from the reports of this Court upon the point, it is the duty of the Counsel

to suggest that the law, as read, does not cover the whole ground; otherwise, a reversal cannot be claimed for the omission.

[8.] Professional ethics and courtesy.

[9.] The judgment will not be arrested in a criminal case, because the indictment was not formally read to the Jury, nor submitted to the opposite Counsel. The objection going to the arrest of the judgment, and not affecting the real merits of the offence, charged in the indictment, comes too late after verdict.

Murder, in Muscogee Superior Court. Tried before Judge WORRELL, at January Term, 1855.

David H. Wright was indicted at June Term, 1854, for the murder of Alexander M. Robinson, alleged to have occurred in February, 1854. At June Term, 1854, a copy of the indictment and list of witnesses was waived. At January Term, 1855, when called for trial, Wright moved a continuance upon thefollowing showing :

| THE STATE | Indictment for Murder, in Muscogee |
| *vs.* | Superior Court. |
| DAVID WRIGHT. | |

And now, at this term, comes the defendant, in his own proper person, in open Court, and asks the continuance of said case; and for causes of continuance, states, on oath—

That Walter T. Colquitt, Esq. is his original and leading Counsel in said case; that since he has been accused of said offence, and during all the period of his confinement in jail, he is the only one of his Counsel with whom he has personally conferred in the preparation of his defence, and with whom he has fully and freely communicated in relation thereto; that for the employment of his Counsel he is indebted to the kindness of his father; and that said Walter T. Colquitt was his first and leading choice, and the Counsel upon whom he mainly relied, and with whom he has mainly conferred. And defendant saith, that he feels both unwilling and unready to go to trial, without his aid and assistance; and that he is informed, and believes, he is unable, from serious indisposition, to render him such aid and assistance.

And as a further ground for continuance, deponent states that he cannot go safely to trial in the present excited state of the public mind against him; that acting upon the love of liberty, which he presumes common to all, he escaped from his long and tedious confinement in jail; and that individuals, aided by the public press, have used the occasion of his re-capture and return to jail, occurring on the 30th ult. and during the present term of this Court, to throw out the most exaggerated statements concerning him; and thus, so to influence public prejudice against him, as to create, he apprehends, the too general desire and hope that he has been remanded to jail, there to remain until he is taken thence by the sentence of the Court, and to prevent him from obtaining, at the present term, a fair and impartial Jury. And this deponent saith, that his application for a continuance of the case on these grounds, is not made for delay, but to accomplish for himself a fair and impartial trial, and to be aided therein by the Counsel of his choice; that he hopes, by another term of the Court, that the health of the said W. T. Colquitt will be restored, and such aid rendered him; and that by another term, the public excitement and prejudice against him now so industriously created, will have abated, and that he will be able to select a Jury, uninfluenced and unaffected thereby.

And deponent further saith: Christopher Finley is a material witness for him, and that he is informed and believes, that he has been subpœnaed, and resides in the County of Bibb, and is not absent, by his leave, consent or procurement.

That he expects to prove by said Finley, that he was in company with this deponent on the night of the alleged shooting, and that he, this deponent, had no pistols or other firearms; and that the pistol or pistols said to have been found near where he was arrested, were not the pistols of this deponent; and that he, the deponent, did not have the same in his possession on the night of the shooting; and he further

expects to prove by said Finley, that he (Finley) was near by when Robinson was shot, and that there was but one pistol fired on the side walk in front of the Pleasant Hour, where said shooting of Robinson occurred.

Deponent saith, that this affidavit is not made for delay, but to enable him to procure the evidence of the said Finley, which he hopes and expects to do at the next term of the Court.                    DAVID H. WRIGHT.

Sworn to and subscribed in open Court, this 9th Jan. 1855.
      DAVID J. BARBER, Clk.

The Court over-ruled and denied the motion; to which ruling and decision, the said defendant, by his Counsel, then and there excepted.

A Jury was impannelled, and the Sol. Gen. *pro. tem.* James N. Ramsey, submitted the cause to the Jury, by an opening speech explanatory of the nature and importance thereof, but without submitting the bill of indictment against defendant to the Jury, by reading the same, or tendering the same to his Counsel.

During the impannelling of the Jury in the case, one Jenkins Lowe was called as a Juror, and being put upon his *voire dire*, in answer to the usual question, rendered himself competent. The prisoner demanded the examination of the Juror before triors, which was granted, and before the triors the Juror announced, "that he had formed and expressed an opinion from rumor and report, but that such opinion was not fixed and decided ; that he had said, if what he had heard should be proved to be true, the prisoner ought to be hung ; that he had heard the prisoner shot down deceased in the street, when he went to arrest him, without provocation;" thereupon, the Court charged the triors, "that the mere formation of an opinion did not disqualify a Juror, but that such opinion must be both formed and expressed, and must be fixed and decided ; and that if not so fixed and decided, it did not disqualify him."

To this charge the defendant excepted.

During the impannelling the Jury, very many of the Jurors called were put before triors; and the Court, in all such cases, charged the triors, as the law, that the mere formation of an opinion did not disqualify a Juror; but that it must be both formed and expressed, and fixed and decided, to amount to a disqualification; and to each and every of such charges defendant excepted.

During the progress of said trial and the taking of the evidence therein, it was proposed to prove the deceased, at the time of said killing, was the Deputy Sheriff of said County of Muscogee, and had a warrant against the defendant, and to give in evidence said warrant. To all and every part of which evidence, and to the admissibility of said warrant in evidence, the defendant, by his Counsel, objected; which objection was over-ruled, and defendant excepted.

The Counsel for the prisoner asked the Court to charge the Jury, that they were the judges of the law as well as of the facts in criminal cases.

In answer to this application, the Court replied, "that he would, if not objected to, read what the Supreme Court had said upon that subject, which was as plain as any thing he could say." And therefore, no objection being made, the Court read from the case of *The State vs. Holder*, (5 *Ga. R.* 445,) the following words—giving no other or further charge in answer to said application: "We only say, that it is the right and duty of the Court to declare the law in criminal cases, as well as in civil; and that it is, at the same time, the right of the Jury to judge of the law as well as of the facts in criminal cases." To which refusal to charge and charge given, defendant excepted.

Objection was made to the verdict being received, on the ground that the indictment had not been read to the Jury or submitted to the Counsel. The Court over-ruled the objection, and defendant excepted.

On these several exceptions, error has been assigned.

WELLBORN and H. HOLT, for plaintiff.

MCDOUGALD & RAMSEY, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] The first error complained of in this case is, that the Court over-ruled the motion for the continuance of the cause. The application was based upon three grounds—1st. The absence of the late Judge Colquitt, one of the prisoner's Counsel. 2dly. The excitement of the public mind which would not admit of an impartial trial; and 3dly. The non-attendance of the witness, Finley.

Was the showing sufficient to entitle the defendant to a postponement of his trial?

[2.] As it respects the absence of Counsel, upon whom the prisoner, as he alleges, mainly relied for his successful defence, on account of his great powers as a criminal advocate, the showing is defective in this: Mr. Wright fails to state, and for the reason, no doubt, that he could not conscientiously, that he *expected* to have the benefit of his services at the next term of the Court. He did swear that he *hoped* he would recover, so that he might have his aid. So we all did. But it was hoping against hope, from the known character of his disease. The absence of Counsel, when resisted, is a ground of continuance not favored by the Courts; and especially as in this case, when the accused was defended by two of the most distinguished members of the bar. Had Judge Colquitt been taken suddenly ill, leaving no time or opportunity for his place to be supplied by others, the case would have been different.

[3.] As to the excited state of the public feeling, it will be remembered that the true bill was found against the defendant in June. He was then arraigned, and waived a copy of the indictment and list of witnesses. The killing had taken place the February before. And when put upon his trial in January, 1855, he asks a continuance, not so much on account of the excitement resulting from the offence with which he was

charged, but because of the newspaper agitation of the subject, occasioned by his subsequent escape and re-capture; and he assigns, as an apology for this last act, his love of life and liberty.

While we readily concede that this was a very natural step on his part, we apprehend it would be a most dangerous doctrine to establish, that a party should invoke his own misconduct and the consequences necessarily resulting therefrom, as a reason for the indulgence which he seeks. Popular excitement has never been made the ground for a continuance, except at the first term; and that, too, when the crime had been but recently perpetrated. Here, there would have been a sufficient cooling time between February, 1854, and January of the next year, eleven months; and all that transpired within that interval, being the legitimate fruits of the defendant's own doings, it cannot be sanctioned by the Court as a proper excuse for postponing the trial.

[4.] In addition to other objections which might be stated, there is one fatal omission as to the witness, Christopher Finley. He resided in a few hours' travel of Columbus. The defendant had the most ample time and opportunity to have subpœnaed him. He swears that he was informed and believed that this was done; but he should have proven the fact, this being the second term of the Court after the true bill was found. If true in point of fact, it would have been so easy to make it appear. The ends of justice could hardly be subserved, by continuing a cause upon such a statement. He not only came short of proving that the witness was subpœnaed, but he made no application to the Court for compulsory process to compel his attendance, and a suspension of the trial until this could be done. This witness, as the record discloses, saw the homicide committed. One may well doubt, under the circumstances, whether the attendance of Mr. Finley was desired or desirable.

Upon none of these grounds then, nor upon all of them taken together, can we say that the Court below, flagrantly abused its discretion in refusing to delay this cause.

[5.] The second error assigned is, the charge of the Court to the triors, in relation to the competency of Jenkins Lowe as a Juror; and in causing the said Lowe to be put upon the prisoner as a competent Juror.

The point of this exception is, that the Court charged the triors that the mere formation of an opinion did not disqualify a Juror, but that the opinion must be both formed and expressed; and must be fixed and decided; and that if not so fixed and decided, it did not disqualify.

Lowe stated, upon his examination before the triors, that he had formed and expressed an opinion from rumor and report; but that it was not fixed and decided; that he had said that if what he had heard should prove true, that the prisoner ought to be hung; that he had heard that the prisoner shot down the deceased in the street, when he went to arrest him, without provocation.

We concede that the Court was not altogether so happy, perhaps, in the instruction given to the triors. The Juror had, upon his *voire dire*, rendered himself competent by answering both of the Statutory questions in the negative. The prisoner still apprehending that he might not be indifferent, demanded triors, as he had a right to do. And the Court should have told the triors, that the issue submitted to them was, whether or not the Juror was undecided. The Court might then have furnished them with such tests as the law supplies, to ascertain the fact submitted for their finding.

Still, was the charge illegal? We hold that it was not, even as understood by the learned and able Counsel who have argued this cause. Their complaint is, that the Court was wrong in instructing the triors that the mere formation of an opinion, was not sufficient to disqualify a Juror; but we maintain that the Court was right, and the presiding Judge might have gone further, and have charged them that the *mere* formation and *expression* of an opinion, does not, necessarily, render a Juror incompetent; that it depends upon the *character* of the opinion, and not upon the formation and expres]

Wright *vs.* The State.

sion of it. Mr. Lowe had both formed and *expressed* an opinion unfavorable to the defendant; and yet, Mr. Lowe, according to the adjudications, was a good Juror.

We apprehend, however, the Court meant to say, that neither the formation nor expression of an opinion, would exclude a Juror, unless it was settled and abiding. No other decision would have applied to the circumstances of Mr. Lowe's case. To have charged that the mere formation of a fixed opinion would disqualify, would have been a mere abstraction as to Mr. Lowe, who had both formed and *expressed.* He did not stand in the category of one who had *formed* an opinion only, whether that opinion was irrevokable or evanescent.

The next complaint is similar to this, namely : That in impannelling the Jury, many of them were put upon triors, when the Court repeated the same instructions.

We will not reiterate what we have already said. If every other Juror was in the predicament of Mr. Lowe, the charge was an abstraction, as understood and argued by Counsel ; and it does not appear, affirmatively, that they were not. Be this as it may, the Court enunciated no false doctrine, and if Counsel desired a charge more full and definite, it was their duty to have called the attention of the Court to the point. They should have called upon the Court to say to the triors, that the mere *formation* of an opinion, provided that opinion was fixed and continuing, was a disqualification. No such charge was requested ; none to the contrary of that was given, and if given, was not applicable, certainly, to the case of Jenkins Lowe, the only Juror, concerning the exact state of whose mind we have any information.

[6.] The next exception is, that the Court erred in admitting all the evidence which went to prove the official character of the deceased; and his having in his possession a warrant at the time of the killing. Having decided this point adversely to the plaintiff in error, in Boyd's case at Columbus in January last, and being well satisfied that the official character of the party killed, need not be set out in the indictment, we affirm the judgment of the Circuit Court, upon

this ground. The fact that Robinson acted as D. Sheriff, and by virtue of warrants placed in his hands, with which to arrest Wright, constitute a part of the proof in the case, and need not be alleged in the indictment. He placed his hands upon Wright, saying, "I arrest you." This would be a trespass on the part of Robinson, but for his authority; and hence, the reason for showing that he acted officially as the agent of the law.

[7.] The next assignment is, the refusal of the Court, when asked by Counsel for the prisoner, to charge the Jury, that they were the judges of the law as well as the fact in criminal cases.

It will be seen, by reference to the statement of facts, that instead of giving the charge directly, the Judge proposed to read to the Jury, "if agreeable," what this Court said upon that subject. No objection being made, His Honor read a paragraph from the case of *Holder against The State*, (5 *Ga. Rep.* 445,) to this effect: "that it is the right and duty of the Court to declare the law in criminal cases, as well as in civil; and that it is, at the same time, the right of the Jury to judge of the law as well as of the facts, in criminal cases."

Was not this instruction commensurate with the charge asked? Could the Jury entertain any doubt as to their duty, resulting as it did, necessarily, from their right? Did it not put both the right and duty of the Jury, in criminal cases, upon the same footing *as to the law* upon which they stood, *as to the facts*?

And here, again, we recur to a position taken by this Court at Columbus, and which we shall enforce with increasing stringency in the trial of causes. When prisoners had scarcely any rights, and were deprived of the benefit of appearing by Counsel, it might do to talk of their *standing* upon all their rights, what few they had. At least, this expression had some significance then. But it has lost it at this day. Their rights are ample. And with this new state of facts, have sprung up corresponding duties. Why this appearance, by Counsel, a right long denied by our British an-

cestry, but guaranteed by the Constitution? It is partly to aid the Court in the ascertainment and application of the law. No bench is sufficient, of itself, for these things, however profound its learning, or admirable its wisdom. The object of appearance by Counsel, is not to carry the case, by management, right or wrong, against the law and against the evidence; but to see that the laws of the land are correctly administered.

To expect a Judge to recollect, at the moment, all the law applicable to all the facts of the case, and to state it with technical and critical accuracy, with all the exceptions and qualifications, is to require an impossibility. We have a striking illustration of this fact, on the trial of Aaron Burr in 1807. What opinion should be deemed a sufficient ground of challenge, was the question made to the Court, and argued zealously by Counsel. (*Burr's Trial*, 1 *Vol.* 370.)

When a Juror was called to the book and interrogated, Chief Justice *Marshall* said : "The simple question is, whether the having *formed* an opinion, not upon the evidence in Court, but upon common rumor, renders a man incompetent to decide upon the real testimony of the case." So much, now, for the statement of the point. At page 415, the Chief Justice, in delivering the opinion of the Court, after the argument, says: "I have always conceived, and still conceive, an impartial Jury, as required by the Common Law, and secured by the Constitution, must be composed of men who will fairly hear the testimony which may be offered to them, and bring in their verdict according to the testimony, and according to the law arising on it. This is not to be expected—certainly the law does not expect it—where the Jurors, before they hear the testimony, have deliberately formed *and delivered* an opinion, that the person whom they agree to try is guilty or innocent of the charge alleged against him." Is it not perceived, that the question, as put, was, as to the mere *formation* of an opinion? But as re-stated in the decision, it refers to an opinion *deliberately* formed *and delivered*.

The report of the case shows, that the question was as to the · *formation* of an opinion upon common rumor. ·

Finding, then, such looseness of language in the mouth of ˙ this truly learned and great man, of whose talents his country will be justly proud for ages, to demand that degree of ac-·curacy contended for frequently, would amount to a virtual' repeal of both the Penal and Civil Code. And it is this which constitutes the strong and stubborn objection to the·Procrustean Act of the last Legislature, known as the·New Trial Act. It requires impossibilities. .

Counsel, then, have duties to perform. They must call the attention of the Court to any thing omitted or overlooked, and failing to do so, they must not come here and claim a rever-sal, not because the Court has not charged the law correctly,. but because it has omitted to charge all the law, with all possi-bleprecision and verbal accuracy.

[8.] It is suggested, that it would have been disrespectful in Counsel, to have interposed any objection to the reading of a portion of one of the decisions of this Court, even when aked if they had any. *There is nothing that Counsel may not do, in the prosecution and defence of the rights of their clients, provided the manner of doing it is courteous and respectful.*

Says Professor Sharswood, in his Lectures on Professional Ethics: " Fidelity to the Court, requires from the bar out-ward respect, in words and actions. The oath of an Attorney undoubtedly looks to nothing like allegiance to the person of ˙ the Judge, unless in those cases where his person is so inse(, parable from his office, that an insult to the one is an in- · dignity to the other. In matters collateral to official duty, the Judge is on a level with the members of the bar, as he is with the rest of his fellow-citizens ; his title to distinction and re-spect resting on no other foundation than his virtues and quali-ties as a man. There are occasions, no doubt, when duty to the interests confided to the charge of the advocate, demand firm and decided opposition to the views expressed, or the course pursued by the Court—nay, even manly and open re-monstrance. But this may be, and yet that outward respect

be preserved, which is here inculcated.  Counsel should ever remember how necessary it is, for the dignified and honorable administration of justice, upon which the dignity and honor of their profession very much depend, that the Courts and the members of the Courts, should be regarded with respect by the suitors and the people; and that on all occasions of diffi-culty and danger to that department of government, they should have the good opinion and confidence of the public on their side.  Good men, of all parties, prefer to live in a coun-try in which justice, according to law, is administered."

"Counsel should bear in mind, also, the wearisomeness of a Judge's office—how much he sees and hears, in the course of a long session, to try his temper and patience.  Respect-ful submission—nay, most frequently, even cheerful acquies-cence in a decision, when, as is most generally the case, no good result to his cause can result from any other course, is true wisdom, as well as propriety.  *An exception may be no-ted to the opinion of the bench, as easily, in an agreeable and respectful, as in a contemptuous and insulting manner.*  The excitement of the trial of a cause, is no doubt often the rea-son and apology for apparent disrespect in manner and lan-guage; but let it be observed, that petulance in conflicts with the bench, which renders the trial of causes disagreeable to all concerned, has, most generally, an injurious result upon the interests of clients."  (*Ps.* 14, 15, 16.)

[9.] The next and last objection is, that the Court erred in permitting a verdict to be rendered, received and recorded, upon a bill of indictment not tendered to the opposite Coun-sel nor read to the Jury.  The indictment was before the Jury; the case was tried upon it; the verdict was written and returned upon it.  No requirement was made, at the commencement of the trial, that it should be read.  What is the object of this writ of error?  To arrest the judgment; and the Code is explicit, that nothing can be heard for this purpose, which does not *affect the real merits of the offence* charged in the indictment.  (*Cobb's Dig.* 833.)  This excep-

tion is to a matter of form in the proceedings; and comes too late, after trial and verdict.

Upon this, and upon any other matter in criminal or civil proceedings, while we shall always guard, carefully, every point, great or small, affecting the real merits of the case, we feel it to be a solemn duty, imposed by the whole tenor and spirit of our laws, as well as by the everlasting principles of justice, to struggle hard to get round all mere formal objections.

Upon the whole case, then, while there may have been some irregularity yet, we see no sufficient reason for reversing the judgment and ordering a new trial.