## ALSOP *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 4—547.]

**Homicide—Indictment.**

In an indictment for homicide, the fact that the deceased was an officer acting in the discharge of his duty when he was killed need not be alleged.

**Homicide—Indictment.**

In an indictment for homicide it is not essential that the evidence relied on to fix the malice alleged should be set forth

**Homicide—Indictment.**

A person indicted for homicide is not entitled to be informed by the indictment of the quality or quantity of the evidence relied on to prove his malice.

**Homicide—Evidence.**

A warrant addressed to the chief of police of a city and sent by the chief of police to a constable of a township, with a letter directing the constable to arrest the defendant, was admissible in evidence in the prosecution of the defendant for killing the constable while attempting to arrest defendant, where defendant knew that the deceased was a constable.

**Homicide—Degree of Offense.**

The fact that a warrant in the hands of a constable was defective does not reduce the offense from murder to manslaughter, where the constable was in good faith and using no more force than necessary in attempting to make the arrest.

**Sheriffs and Constables—Defective Warrants.**

Peace officers, in the exercise of their duties, are not required to see that warrants which come into their hands are free from defects, and because thereof permit felons to escape.

APPEAL FROM JEFFERSON CIRCUIT COURT.

December 16, 1882.

Opinion by Judge Hargis:

On information on oath, from Charles Arnz, a warrant addressed to the marshal of the city court of Louisville was issued by that court, for the arrest of appellant for the crime of forgery. It was delivered to the chief of the detective force of Louisville, and having failed to execute it, he sent it in a letter to J. S. Harrison, a constable of Jefferson county, requesting him to arrest the appellant and bring him to the city.

On the 2d day of August, 1881, two months and eleven days after the teste of the warrant, Harrison found appellant at a well near Kendall's store in Jefferson county, informed him that he had a warrant for his arrest and began to read it to him, but before finishing handed it to appellant, telling him to read it. The appellant appeared to read it, handed it back to Harrison and said: "I want to go to John Knadle's, my brother-in-law, to change my clothes, and from there to my father's, and if my father will come to town with me I will go, and if he don't I won't." Harrison said: "Well, I am not authorized to run all over the country with you; I will send and get your clothes and you can make the change." Appellant replied: "I have got nobody to go." Miss Alice Lowe, who was present, said to the appellant, "I will go and get your clothes." He made her no answer.

Harrison then took hold of him and said: "Come along, George, it is better than you should go; I don't want any fuss." He jerked loose from Harrison, and then said: "G—d d——n you, Bud Harrison! I will knock hell out of you." Harrison drew his pistol and said: "Alsop, you are armed." Appellant said: "I am not." Harrison rejoined: "Yes, you are," and appellant replied: "I have not got a thing but this knife in my hand." Harrison thereupon put his pistol in his pocket, and immediately appellant drew his pistol and shot Harrison three times in quick succession. Harrison fell at the feet of Miss Lowe, and she turned him over on his back, and appellant stepped back and said: "G—d d——n you! ' Will that do you?" and walked off up the pike. Harrison soon died. The appellant fled, was subsequently arrested, tried, convicted and sentenced to the penitentiary for life, from which he appealed.

The first error, which his counsel maintains was committed against him, is that the testimony relative to the warrant and the official capacity in which Harrison was acting when slain was irrelevant to the issue, because the indictment failed to charge that Har-

rison was a constable and acting in the discharge of his official duties. This question has been considered by the courts of at least two states of the Union, and the rule · governing it is succinctly and plainly laid down by the text books. Wharton on Homicide (2d ed.), § 803, says: "If a constable, watchman, or other minister of justice be killed in the execution of his office, the special matter need not be stated, but the offender may be indicted generally of murder by malice prepense." Bishop on Criminal Procedure (2d ed.), § 506, expresses himself thus: "It is always necessary, in an indictment for a felonious homicide, to mention the name of the person slain, if known. But if he was an officer of the law, the fact that he was such officer, or that he was acting in the discharge of his official duties, need not be stated." In support of the text the cases of *Boyd v. State,* 17 Ga. 194, and *Wright v: The State,* 18 Ga. 383, are cited. In the former it was held not to be necessary to allege in the indictment that the deceased was an officer acting in the discharge of his duty when killed, in order to let in the proof of those facts. This doctrine had its origin in Mackalley's Case, 9 Coke 61, for killing a sergeant of London, where it was said, though not necessary to a decision of the point, that such allegations might be omitted as a general indictment; when an officer is slain is sufficient. It matters but little that the statement of the doctrine in Mackalley's case was obiter, as it has been incorporated in the text books, and is maintained by authority to such an extent as to remove all doubt of its soundness. The cases cited have been followed and approved by the courts of Missouri in the case of *The State v. Green,* 66 Mo. 631, and we feel it our duty to recognize the rule which the text book and authorities so clearly establish.

The appellant was sufficiently informed by the indictment of the nature of the charge against him, to enable him to know what was intended. He was accused of willful murder, and the facts constituting the offense were substantially stated to be that he maliciously shot and killed J. S. Harrison, with a pistol, in the county of Jefferson, on the —— day of August, 1881. What did the appellant understand was meant by such allegations when they were read to him? If he understood aright, and as any person of common understanding was bound to know, he knew that he was charged with killing a human being at a time, place, with particular means and in such a manner, if proved, as would render him

guilty of murder, whether his victim was a peace officer or private person. And it is not essential to his lawful information that the evidence relied on to fix the malice alleged in the indictment should also be set forth in it. Malice was sufficiently charged and the burden rested on the commonwealth to establish that ingredient of the offense, and whether the circumstances of the killing or the capacity of the parties rendered it less difficult, or required a smaller quantity of proof than to establish actual malice flowing from an ancient or secret grudge, it does not logically follow that the appellant was legally entitled to be informed, through the indictment, of the quality or quantity of the evidence to be relied on to prove his malice.

The next and only objection seriously urged is that the warrant, which was read as evidence to the jury, furnished no authority to Harrison to arrest appellant, and that the evidence was irrelevant and incompetent, and that the instructions relative to the point were erroneous. The warrant was legally issued, addressed and in legal form. The point made rests upon the facts that the warrant was not addressed to "any constable," and that Harrison was not deputized in writing by the marshal to execute it. Admitting that the defect existed, it was, nevertheless, the duty of the constable, if he had reasonable grounds for believing that appellant had committed a felony, to apprehend him, and the existence and possession by Harrison of the warrant and the letter accompanying it were competent and relevant to this view, as held by this court in *Saulsberry v. Commonwealth.* It tended to show the good faith of Harrison and the reasonableness of his belief that appellant had committed a felony. The mere defect in the conferring of authority upon Harrison to execute the otherwise legal warrant does not render the instructions illegal, as we think the law of the case was substantially given to the jury, except that it was too liberally given in behalf of the appellant. For, if he knew that Harrison was a constable and was in good faith using no more force than was reasonably necessary to execute the warrant, although defective, the appellant had no right in law to kill him, for the sole purpose of preventing an arrest, and the slaying of Harrison under such circumstances was murder and not manslaughter.

It was the duty of appellant to submit when he saw the warrant in the hands of a known officer, or heard it read, and look for redress to the law if illegally arrested. He could not take advantage

of the mistake and shoot down the officer when he was in no danger of loss of life or great bodily harm, other than what would necessarily follow the effort of the officer, in good faith, to arrest him with no more force than reasonably necessary to accomplish that purpose, and then claim that his offense was manslaughter, for it was murder, although the warrant was defective.

says Mr. Wharton [1 Wharton's Crim. L. (8th ed.), § 414] :

"A malicious and deliberate killing of an officer is murder, to which it is no defense that the officer was at the time endeavoring to arrest, on defective or void procedure, the defendant or his friends." This view of the case was excluded from the jury, and they were told, after being instructed, first, that if appellant maliciously killed Harrison they should find him guilty of murder, that if he unlawfully, without malice, and not in self-defense, but in sudden affray, heat or passion produced by considerable provocation, such as an actual assault or trespass to his person, killed Harrison, he was only guilty of voluntary manslaughter. The only qualification to this instruction was that if the provocation resulted from a legal arrest on reasonable grounds for believing the appellant guilty of felony, he was not entitled to have his offense reduced to manslaughter, when the jury ought also to have been told that his arrest upon the defective warrant would not reduce his offense from murder to manslaughter, if he knew or had reasonable grounds for believing that Harrison was a constable, and was using no more force than reasonably necessary to make the arrest in good faith. The abstract definition of law contained in instruction number 4, in which the court said: "A constable is a peace officer, and he may arrest a person charged with a public offense for whom he has a warrant delivered to him," could not have prejudiced the appellant because the effect and plain meaning of instruction number 2 is, that if the affray or sudden heat of passion was produced by provocation, such an assault or trespass to the appellant's person by Harrison in taking hold of him for the purpose of arresting him under the warrant, his offense is manslaughter. And we have shown before that under the circumstances of this case the slaying of Harrison, although the warrant was defective, was murder, and the jury should have been so instructed. The law does not allow a person about to be arrested on a warrant, which is legally defective, or which is being executed by an officer, in pursuance of verbal directions, when his authority to execute it should have been

in writing, in order to avoid arrest, to slay the officer, who may be acting in good faith under the warrant. An opposite rule would place the innocently-erring and faithful officer at the mercy of criminals on the merest technicality. This is not an age nor country of lordly, high-passioned and resentful barons, with servile retainers trooping at their backs, rendering it practically necessary to turn the dwellings of the country into actual castles, and constitute each man the defender of his own liberty, but it is the age of enlightened civilization and the country of courts of easy access, vested with constitutional and legal power to redress every wrong and preserve every right possessed by the citizen. Hence the necessity can scarcely ever arise, on any pretext, or for any purpose, for the citizen to take the law into his own hands, and by a kind of rude, primitive justice, belonging to a past age, protect his personal liberty from such invasion as he may consider unlawful. And when a known officer of the law, armed with a warrant, though defective, emanating from official authority, whether the charge it contains be true or false, makes known his purpose, and in good faith attempts to execute it, it is the duty of the person about to be arrested to submit to his authority, when exercised in a proper manner. This doctrine is based upon a distinction between the authority of a private person and a constable in making an arrest. The former must act upon his own knowledge, and not the report of others, unless part of the *res gestae* of such facts gave him a reasonable ground for believing that the person arrested has committed a felony. But the latter may lawfully arrest another upon the information of others, without any positive charge, or his own knowledge of the circumstances on which the suspicion or charge is founded, if such information be of such a character as would furnish the constable reasonable grounds to believe that the person charged had committed a felony. This distinction is based upon the existence of the official power and duty of the constable, with reference to such matters under the common law, and the absence of any necessity to perform such duties voluntarily by private persons. And in the exercise of their sacred duty to society, officers should not be required, on peril of their lives, either to permit felons to escape, or see that warrants, which come to their hands, are without a flaw or defect. It is better that personal liberty should be regulated by law and that law executed and submitted to in the light of civilization, and with the concessions, which every

citizen is bound to make for the good of all, than to have the vicious take advantage of defects of procedure, which technically violates his personal liberty, and shoot down the civil officers of the land under guise of law, to escape its merited penalties. Such a perversion of the security which the law throws around every citizen in the exercise of his personal liberty, as this record exhibits, merits the condemnation of courts and the just but lenient verdict of the jury which was rendered in this case.

Wherefore the judgment is *affirmed.*

*Isaac Caldwell, W. R. Kinney, for appellant.*

*A. G. Caruth, P. W. Hardin, for appellee.*

