## SMITH *vs.* THE STATE OF GEORGIA.

1. A defendant was indicted for murder at the March term, 1885, of court, and at that term the case was continued at his instance. At the succeeding September term, it was again continued on account of the absence of one of defendant's attorneys, who, he testified, was his leading counsel. In October thereafter, the defendant retained another firm of attorneys. When the case was again called, a motion to continue it was made on the ground of the absence of one of the members of that firm, who, the defendant stated, was his leading counsel, and who was absent on account of sickness. Neither the absent attorney nor his partner, nor any of the three other attorneys in the case, stated that the absent attorney was the leading counsel ; nor was it stated in the showing for continuance that the application was not made for delay only :
*Held,* that it was not error to refuse a continuance on that ground
2. Where a continuance was sought on the ground of the absence of certain witnesses, but it was not shown that the application was not made for the purpose of delay but to procure the attendance of the witnesses at the next term of court, there was no error in refusing a continuance on that ground, especially where counsel for the State proposed to postpone the case until the next day to give the accused time to get his witnesses, they being accessible, but this was declined ; and where no affidavits were presented,

either at the time of the motion for a continuance or upon the hearing of the motion for a new trial, showing what the absent witnesses, if present, would testify.

3. Where a ground of a motion for a new trial assailed certain of the jurors as incompetent from prejudice or bias, on account of statements made by them to the effect that the accused should be hung, which ground was supported by the affidavits of certain persons, but the jurors directly contradicted such affidavits, and several other citizens deposed to the good and truthful character of the jurors and the bad character of the persons who made the affidavits for the accused, there was no abuse of discretion in refusing a new trial on that ground.

4. Where one ground of a motion for a new trial rested on the allegation that the sheriff acted improperly in going into the jury-room and holding a conversation with the jury and suffering liquor to be given to them, and that the bailiff in charge of the jury was guilty of misconduct in talking to divers persons in their hearing, which ground was supported by the affidavit of three or four persons, yet where the alleged facts were denied by the sheriff, the bailiff and all the jurors, and it was shown that all the sheriff did was to open the jury-room and ask if they had agreed or were likely to agree upon a verdict, and on receiving an answer, to state that he was going home in an hour, and it was further shown by the jurors that nothing was said or done to influence their verdict, this ground of the motion was properly overruled.

5. Where one ground of a motion for a new trial was that certain persons in the court-room, while the solicitor-general was making the concluding argument, were winking and making signs to the jury, and saying that the accused should be hung, which ground was sustained by the same persons who made the other affidavits for the accused, but the presiding judge certified that he saw no such demonstrations, and the alleged facts were denied by the affidavits of the clerk of the court and a large number of persons who were present at the time, and the affidavits of many persons were introduced to the effect that those who testified for the accused were unworthy of credit, this ground of the motion was properly overruled.

6. The evidence not only authorized, but demanded, the verdict.

December 21, 1886.

Criminal Law. Continuance. Attorney and Client. Witness. Jury and Jurors. Officers. Practice in Superior Court. Before Judge HARRIS. Heard Superior Court. September Adjourned Term, 1885.

Reported in the decision.

GARTRELL & LADSON; HUGH BUCHANAN; GORDON & ADAMSON, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, by brief; H. M. REID, solicitor-general, for the State.

BLANDFORD, Justice.

J. W. Smith was indicted, tried and convicted of the murder of Bonner Barker at the special December term, 1885, of the superior court of Heard county. He made a motion for a new trial, which was refused by the presiding judge, and to this refusal he excepted, and assigned as error the various grounds in the motion for new trial.

1. One of these grounds, and the main ground insisted on before us, is that the court erred in not granting a continuance of the case upon the motion made for that purpose. The motion was placed on two grounds: 1st, on account of the absence of L. J. Gartrell, of the firm of Gartrell & Ladson, who, the plaintiff testified, was his leading counsel; and it was shown that Gartrell was sick and could not attend the court; and the State showed, in opposition to this motion, that the indictment was found at the March term, 1885, of said court, and the case continued at that term by defendant, and that defendant continued the case at the September term, 1885, on account of the absence of Mr. Adamson, who, he testified at that term, was his leading counsel, and the case was then continued for that reason. Mr. Adamson, Mr. Gordon and Judge Buchanan were all present, and neither of these counsel stated or testified that General Gartrell was leading counsel, nor did Mr. Ladson, General Gartrell's partner, so state, nor is there any affidavit from General Gartrell that he was leading counsel; but it was shown that Smith, after he had been sent to jail in Fulton county, employed Gartrell & Ladson in October, 1885, after the last continuance of the

case. The applicant, in his showing for a continuance, did not state that the application was not made for delay only. The court refused the motion for continuance on this ground, and we think he did right. Section 3525 of the code makes it a condition, in an application for continuance, that the applicant should make it appear that the same was not made for delay only, when it is made for the absence of leading counsel; and on this account, the court was right to have refused the continuance. But the silence of all the counsel for defendant, including General Gartrell, as to the fact whether Gartrell was leading counsel, signifies something itself; it is a strong circumstance from which the court would infer and conclude that Gartrell was not, in fact, the leading counsel. There were present eminent and experienced counsel for the accused, and the court doubtless believed that this motion, under the circumstances, based on Gartrell's being the leading counsel, was merely a subterfuge to procure another continuance of the case. Section 415 of the code says, " The leading counsel is he who, at the time of the trial or raising of any issue connected with the cause, is, in the judgment of the court, the counsel upon whom the client relies more than any other;" and again, section 416 declares, " If there is more than one upon whom the client thus relies, the court shall, as between them, give him preference who was first employed." The court must, in all cases, determine who was leading counsel. In this case, the court, counsel and client had relied on Mr. Adamson and regarded him as leading counsel at the March and September terms of the court, previous to General Gartrell's employment as counsel in the case, and the court no doubt recognized him to be the leading counsel for the accused. He was present, and the client could not displace him as leading counsel by having subsequently employed other counsel ; and it was for the court to determine, at last, who was leading counsel, and he did determine that General Gartrell was not the leading counsel in this case, and did

right in overruling this ground in the motion to continue this case.

2. The next ground in the motion to continue the case was on account of the absence of certain witnesses. This ground is defective, as not showing that the application was not made for the purpose of delay but to procure the testimony of the witnesses at the next term of the court. The court might very well, for this reason, have refused to grant the continuance. It also appears that the State proposed to postpone the case until the next day to give the accused time to get his witnesses, which the accused declined to accept; also that the witnesses were accessible, and no affidavits were presented, either at the time the motion for continuance was made or upon the motion for new trial, as to what the absent witnesses, if present, would testify. We think that the court, upon consideration of the facts, did right to overrule this ground taken in the motion to continue, and that the new trial was properly refused on this ground. 71 *Ga.* 279; 38 *Ga.* 509; 18 *Ga.* 383; 45 *Ib.* 57, 72. See also 72 *Ga.* 98, 570.

3. The next ground of the motion for new trial assails certain of the jurors as incompetent from prejudice or bias, by reason of statements made by them to the effect that accused should be hung; and this ground is sustained by affidavits of persons who swore that they had heard these statements by the jurors. The jurors, each of them, flatly contradicted the affidavits for the accused; and there were also the affidavits of several citizens deposing to good and truthful characters of the jurors and the bad character of the affiants for the accused. The court overruled this ground in the motion for new trial, and he did not abuse his discretion in so doing.

4. The next ground in the motion is, that the sheriff acted improperly in going into the jury-room and holding a conversation with the jury, and suffering liquor to be given to the jury, and the conduct of the bailiff in charge of the jury in talking to divers persons in the hearing of

the jury; and this is sustained by the affidavits of three or four persons, but it is denied by the bailiff, sheriff and all the jurors, showing that the facts stated in the affidavits of the affiants for the accused are wholly untrue. All that the sheriff did was to open the door of the jury-room and ask if they had agreed or were likely to agree upon a verdict, and on receiving answer, he stated he was going home in an hour. The jury had fire, and the court directed that they be allowed to have a fire. The jury all stated that nothing was said or done to influence their verdict. The sheriff is the executive officer of the court; he is to have bailiffs in attendance upon the court, and is to superintend them and see that they discharge their duties, and to have a general superintendence of juries, who are charged with a case, and to see that the orders of the court are carried out; and for this purpose, he may go into a jury-room, and if he says and does nothing to influence the jury in their finding, this will not render their verdict void. So the court did right to overrule this ground of the motion for new trial. See 70 *Ga.* 264, 765; 61 *Ga.* 166; 45 *Id.* 225; 73 *Id.* 620; 70 *Id.* 134; 68 *Id.* 760, in which the action of the court is fully authorized.

5. The next ground is, that certain persons in the court-room, while the solicitor-general was making the concluding speech to the jury, were winking, blinking and making signs to the jury, and saying that the accused should be hung. This ground was sustained by the affidavits of certain persons, which persons appear to be and are alleged to be the same who had made the other affidavits for the accused. In opposition, the statement of the presiding judge, the affidavit of the clerk of the court and the affidavits of a great many persons who were in court at the time, disprove the facts sworn to by the affiants for the accused; besides, there were affidavits of many persons that the affiants for the accused were unworthy of credit. This ground was properly overruled by the court.

6. The remaining grounds are, that the verdict is con-

trary to law and without evidence to support it. We will let the testimony in the case answer these grounds in the motion. Mrs. Barker, the wife of deceased, testified that she was in the kitchen about supper time on the night of the 31st of December, 1884. She heard a noise; she looked to see who it was, and she saw John W. Smith, the accused. He said to Pete Whittaker, where is Bonner? He told him he was in the lot, and he went into the lot where Bonner was. Whittaker was standing in the dining-room door, in the yard. While they were in the lot, some one whistled and accused answered back; the whistling was from the road-side of the house. "As soon as accused answered back, I went to the door, and they were fighting; after awhile I heard angry words and I went out there, and John Smith and Andrew Smith both had hold of Bonner; John had the pistol jobbing him in the breast." Witness took hold of the pistol and said: "Lord have mercy." Bonner said, "Gene, I am afraid for you; go back in the house." John said, "I have respect for you, but I don't care a damn for your belly." Bonner said, "Gene, go back in the house." "I said I would not. I begged John to go away, to go home; he said, 'You dam big-bellied bitch, go back in the house, or I will kick your damned arse.' " Mr. Andrew Smith told Mrs. Barker to "go back in the house; there will be no harm done here to-night." "I was still begging him to go off; he turned to Bonner and says, 'will you face Ben. Maxwell?' But he never said what he wanted him to face Maxwell for. I was still begging him to go off, and he said, 'Barker has been telling so many God damn lies on me, I am going to kill him.' I begged him to go off; he shoved the gate to with his back. I was still holding to Barker and begging John to go off and to turn him loose; he said, 'Bonner, I will turn you loose, but you will go to telling some God damn lies on me;' by that time I heard the lot gate, and it was standing open. John said, 'Mrs. Barker, there's going to be no harm done here to-night.' I told him I

would not go until he went off. John slung him out in front of him, and as he turned, he shot him. I had hold of Barker's wrist. After he shot him, he walked out of the gate and went off, him and King and An. Smith, and before they got to the corner of the yard, they struck out running. The pistol-shot struck my husband in the breast. The pistol was a white metal one. As he was shot, he asked me for a drink of water; he lived about fifteen minutes and died; he had no weapons, except a pocket-knife, which was shut up in his pocket." Peter Whittaker testified substantially to what was testified by Mrs. Barker; and these are the only witnesses for the State. King testified for the defendants, and differed with Mrs. Barker only as to the fact that Barker had a knife in his hand, with his arm raised as if in a striking position, just before the pistol fired; he did not see Barker when the pistol did fire. He went there with John W. Smith and Andrew Smith and left with them.

This is the only testimony in reference to this tragedy; and now it is gravely insisted by the counsel for the accused that the case is one of justifiable homicide. For a court to so hold, it would have to take leave of its senses. The accused went to Barker's house after night with a deadly weapon upon his person, he went upon Barker's premises, commenced a difficulty with him, caught hold of him, thrust a pistol in his breast; on being importuned and begged by deceased's wife, he cursed her, using the most obscene and vulgar and abusive language towards her, threatened to kill her husband, and did do it. The evidence demanded the verdict. The facts showed this to be a case falling little short of an assassination. The fact that the accused was armed with a deadly weapon, shows the intent with which he was actuated, and that it was a murderous intent. We have been appealed to by counsel for the accused to exercise whatever power of mercy we may have in the decision of this case. The court only decides the law and is, like the law, unimpassioned and without emotion. If we were

invested with the attributes of mercy, this is not a case for its exercise. The defendant has been tried according to law, by a fair and impartial jury; justice has been done, the law vindicated, and the judgment must stand.

Judgment affirmed.